*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0167p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

Nos. 07-3989; 10-3884
In re  TYRONE NOLING,

        *Movant.*

No. 08-3258
TYRONE NOLING,

     *Petitioner-Appellant,*

  *v.*

MARGARET BRADSHAW, Warden,

     *Respondent-Appellee.*

Nos. 07-3989; 08-3258;
10-3884

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 04-01232—Donald C. Nugent, District Judge.

Argued:  March 9, 2011

Decided and Filed:  June 29, 2011

Before:  MARTIN, COLE, and GRIFFIN, Circuit Judges.

_____

### COUNSEL

**ARGUED:**  Kelly L. Schneider, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Phoenix, Arizona, for Appellant.  Thomas E. Madden, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Respondent.  **ON BRIEF:**  Kelly L. Schneider, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Phoenix, Arizona, Ralph I. Miller, WEIL, GOTSHAL & MANGES, Washington, D.C., James A. Jenkins, Cleveland, Ohio, for Appellant.  Laurence Snyder, OFFICE OF THE OHIO ATTORNEY GENERAL, Cleveland, Ohio, for Respondent.

  MARTIN, J., delivered the opinion of the court, in which COLE, J., joined. GRIFFIN, J. (p. 7), delivered a separate opinion concurring in the judgment.

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Circuit Judge.  The United States District Court for the Northern District of Ohio denied the habeas petition of Tyrone Noling, who is facing the death penalty.  Noling then filed with this Court a petition to file a successive petition (No. 07-3989) and a petition for a certificate of appealability (No. 08-3258).  We consolidated these matters, denied the successive petition, and granted a certificate of appealability on four distinct issues.  Before oral argument, Noling filed another petition to file a successive petition (No. 10-3884).  For the following reasons, we **AFFIRM** the judgment of the district court and **DENY** Noling's latest motion to file a successive petition.

**I.  BACKGROUND**

For a full description of the facts of this case, we point to the thorough order of the district court. *Noling v. Bradshaw*, No. 04-1232, 2008 WL 320531 (N.D. Ohio Jan. 31, 2008).  We detail here only the facts necessary for our discussion.

A grand jury indicted Noling on August 18, 1995 for the murder and robbery of Bearnhardt and Cora Hartig, which occurred in the spring of 1990.  Two of the counts in the indictment asserted that Noling had murdered the Hartigs while committing an aggravated robbery, in violation of Ohio Rev. Code § 2929.04(A)(7), and in an attempt to escape apprehension or punishment for committing aggravated robbery, in violation of Ohio Rev. Code § 2929.04(A)(3).  These are capital charges, allowing the jury to sentence Noling to death if convicted of either of those specific counts.

At trial, the district court permitted the prosecution to impeach its own witness, Gary St. Clair.  Before trial, St. Clair had agreed to testify against Noling for the prosecution, but he changed his mind and his story before trial.  The prosecution called him to testify nevertheless, and elicited that he had originally accused Noling of the

Hartigs' murders.    Additionally, two other witnesses, Butch Wolcott and Joseph Dalesandro testified against Noling.  They recanted their testimony after trial.

A jury found Noling guilty on all counts, including the two capital counts.  Based on the separate recommendation of the jury, the trial court sentenced Noling on February 20, 1996 to death.

## II.  DISCUSSION

### A.    Habeas Petition

We granted a certificate of appealability for the following of Noling's claims: (1) whether Noling's actual innocence claim would excuse any procedural defaults accompanying his constitutional claims; (2) whether the district court erred in allowing the prosecution to treat its own witness as hostile and to impeach the witness with a prior inconsistent statement; (3) whether the prosecution acted improperly by calling its hostile witness solely to introduce the prior inconsistent statement; and (4) whether one of the capital counts in Noling's indictment was faulty.  The district court addressed these issues below and rejected them. *See Noling*, 2008 WL 320531 at *17-24, 29-31, 33, 47-50.  We find the district court's conclusions and supporting analysis persuasive. Noling has not shown that the Ohio Supreme Court's rejection of these claims "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, we must affirm the district court's denial of habeas relief.

Nevertheless, we pause for a moment to highlight our concern about Noling's death sentence in light of questions raised regarding his prosecution.  Noling was not indicted until five years after the Hartigs' murders when a new local prosecutor took office.  That new prosecutor pursued the cold murder case with suspicious vigor according to Noling's accusers, who have since recanted their stories and now claim that

they only identified Noling as the murderer in the first place because they were threatened by the prosecutor. In addition to the identifications being potentially coerced, there is absolutely no physical evidence linking Noling to the murders, and there are other viable suspects that the prosecutor chose not to investigate or did not know of at the time. Furthermore, that St. Clair switched courses before trial, deciding not to testify against Noling, gives rise to even more suspicion. This worrisome scenario is not enough to create a constitutional claim cognizable under habeas and the Antiterrorism and Effective Death Penalty Act. Other evidence considered by the trial court, such as the witness testimony of Wolcott and Dalesandro, prevents us from questioning the jury's decision that Noling was guilty beyond a reasonable doubt. However, reasonable doubt is a legal standard, and given the serious questions that have been raised regarding Noling's prosecution, we wonder whether the decision to end his life should not be tested by a higher standard.

> An execution is not simply death. It is just as different from the privation of life as a concentration camp is from prison. It adds to death a rule, a public premeditation known to the future victim, an organization which is itself a source of moral sufferings more terrible than death. Capital punishment is the most premeditated of murders, to which no criminal's deed, however calculated can be compared. For there to be an equivalency, the death penalty would have to punish a criminal who had warned his victim of the date at which he would inflict a horrible death on him and who, from that moment onward, had confined him at his mercy for months. Such a monster is not encountered in private life.

Albert Camus, *Reflections on the Guillotine*, *in* Resistance, Rebellion & Death (1956).

In *Baze v. Rees*, 553 U.S. 35, 85-87 (2008) (Stevens, J., concurring), Justice Stevens brings to mind the fact that many innocent people are convicted of crimes they did not commit before being vindicated by the timely revelation of exculpatory facts. Some of those people are capital defendants. *Id.* at 86 (citing Brandon L. Garrett, *Judging Innocence*, 108 Colum. L. Rev. 55 (2008); D. Michael Risinger, *Innocents Convicted: An Empirically Justified Factual Wrongful Conviction Rate*, 97 J. Crim. L. & C. 761 (2007)). Sadly, if serendipity tarries too long before interjecting, those

individuals die as innocent men; a travesty that society can avoid altogether in the future by foregoing the "monster" of capital punishment. As Justice Stevens said simply, "[t]he risk of executing innocent defendants can be entirely eliminated by treating any penalty more severe than life imprisonment without the possibility of parole as constitutionally excessive." *Id.* As long as our justice system depends on men and women to make decisions, it will invariably make mistakes. We know not whether it has made one here where Ohio sends Noling to his final reckoning, but our duty requires us to soberly affirm the district court where no constitutional error occurred as to warrant habeas relief.

**B.        Motion to File Successive Petition**

Noling requests that we permit him to file a successive petition based on newly discovered evidence that police did not originally turn over to his defense counsel, and that suggests other potential suspects that might have murdered the Hartigs. Police found a cigarette butt in the Hartigs' yard, and DNA testing showed that the cigarette was not Noling's, but could have belonged to a man named Dan Wilson. As a child, Wilson had once broken into an elderly man's home and attacked him. Complications of the injuries killed the man after he was not found for two days. Wilson's cousin told police that Wilson probably committed the Hartig murders, but provided no proof of this. Additionally, police questioned another man, Raymond VanSteenberg, about his .25 caliber automatic pistol. VanSteenberg's sister-in-law stated that the gun, which was the same type used to murder the Hartigs, had mysteriously gone missing for a time around the murders. Noling claims that this evidence supports an actual innocence claim and a *Brady* claim.

These claims do not rely upon a new constitutional law, so we must dismiss this petition unless (1) "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence," and (2) "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no

reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2).

For the sake of this analysis, we will assume the existence of a *Brady* violation, and further assume that Noling could not have discovered these facts earlier through due diligence. Nevertheless, the newly discovered facts and all the other evidence do not establish clearly and convincingly that a reasonable factfinder could not have found Noling guilty. A man with a troubled past *may* have smoked a cigarette left in the Hartigs' yard, and another man owned the same type of gun used in the murder and could not account for its whereabouts at an inopportune time. This newly discovered evidence, even when viewed with the other evidence, does not prove that one of the other suspects committed the murders. It merely opens the possibility, a very slight one we might add, that one of them did. More importantly, it does not prove that Noling did not commit the murders, or clearly and convincingly nullify the evidence at trial supporting his conviction. Multiple witnesses involved in the Hartig robbery testified that Noling killed the Hartigs. Other witnesses testified that Noling admitted to robbing the Hartigs in their home and that he had access to the type of gun used in the murder. Noling has not established that the entire sum of evidence, new and old, could not allow a reasonable factfinder to find him guilty. Accordingly, we must deny the motion to file a successive petition.

### III. CONCLUSION

We **AFFIRM** the judgment of the district court and **DENY** Noling's second motion to file a successive petition.

---

**CONCURRING IN THE JUDGMENT**

---

GRIFFIN, Circuit Judge, concurring.  I concur in the judgment, only.  I agree that pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the district court correctly denied Noling's petition for a writ of habeas corpus.  Further, I agree that the motion to file a successive petition lacks merit for the reasons stated in section II.B. of the majority opinion.

However, I do not join Judge Martin's obiter dicta regarding the death penalty.